[Cite as *State v. Neff*, 2021-Ohio-3766.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
OTTAWA COUNTY

State of Ohio                                           Court of Appeals No. OT-20-004

     Appellee                                         Trial Court No. 2018-CRI-295

v.

 Rosco G. Neff                                    **DECISION AND JUDGMENT**

     Appellant                                        Decided:  October 22, 2021

* * * * *

James J. VanEerten, Ottawa County Prosecuting Attorney, and
Barbara Gallé Rivas, Assistant Prosecuting Attorney, for appellee.

Kimberly Kendall Corral, Megan Patituce, and
Mallorie Thomas, for appellant.

* * * * *

**OSOWIK, J.**

{¶ 1}  This is an appeal from a judgment of the Ottawa County Court of Common

Pleas, which sentenced appellant to a total prison term of 25 years after a jury convicted

him of 27 of 44 felony and misdemeanor offenses.  For the reasons set forth below, this

court affirms the judgment of the trial court.

## I. Background

{¶ 2}   This appeal originated from 49 felony and misdemeanor theft ring indictments against appellant Rosco G. Neff issued on December 6, 2018, by an Ottawa County Grand Jury that resulted in two jury mistrials, one completed jury trial, guilty verdicts for 27 offenses, and a prison sentence totaling 25 years.

### A. First Jury Mistrial

On the morning of trial, appellee, state of Ohio, dismissed five of the 49 charges. The first jury trial commenced on July 15, 2019, and appellee presented to the jury four victim witnesses and four witnesses from law enforcement who investigated the offenses. The trial court admitted into evidence a lengthy set of stipulations of facts for 38 of the 44 offenses deemed to conclusively establish those facts beyond a reasonable doubt. The stipulations included disclosures that each of three codefendants from appellant's alleged theft ring were required to provide truthful testimony "in all trials relating to all codefendants" in exchange for individual plea deals. The next day appellant requested, and the trial court granted, a mistrial because the first codefendant to testify was hospitalized the previous night after being severely beaten in the Ottawa County Detention Facility.

### B. Second Jury Mistrial

The second jury trial commenced on October 29, 2019, and appellee presented to the jury 13 witnesses: four victim witnesses, four witnesses from law enforcement who investigated the offenses, four witnesses who were codefendant informants, and one

2.

additional informant who was not a codefendant. The trial court admitted into evidence 19 state exhibits and the stipulations of facts for 38 offenses. After appellee rested its case appellant testified in his defense. Appellant testified his lengthy criminal past began as a juvenile and during this time he preferred to avoid jury trials by seeking the best possible plea offers. Appellant then falsely testified about an alleged plea offer in this case. Appellee moved for a mistrial, and over appellant's objection, the trial court declared a second mistrial and found appellant in direct contempt for openly and falsely testifying about plea negotiations. The trial court then dismissed the jury.

{¶ 3} In open court and prior to the trial court declaring the second mistrial, appellee objected to appellant's plea offer testimony; appellant's trial counsel confirmed he advised his client not to testify about any plea negotiations; and the trial court instructed the jury "to disregard that answer. I know that is hard to do, but you are instructed to do so." Then the trial court held a sidebar discussion outside of the jury's hearing. The trial court considered and rejected, after hearing arguments, whether to make an additional attempt at a curative instruction that "'Mr. Neff's testimony about the two-year offer is, in fact, inaccurate.'" The trial court also considered and rejected, after hearing further arguments, whether to directly question jurors regarding separating appellant's testimony from their deliberations while somehow avoiding making it "a too big a deal."

{¶ 4} The sidebar ended, and the jury trial resumed. Appellee moved for a mistrial, arguing appellant disregarded his attorney's instruction and referenced

3.

prohibited plea negotiations while also falsely asserting a favorable plea that appellee never offered. Appellee further argued appellant's misconduct at trial could not be cured with a jury instruction and moved for direct contempt of court. In response, appellant's trial counsel argued against a mistrial because the jury could disregard the offending portion of appellant's testimony stating, "As soon as my client got off the stand, he apologized. It was not his intention to mislead the jury. He was telling things from his point of view."

{¶ 5} After hearing all arguments in open court, the trial court decided, "Well, a mistrial is going to be the order of the day, and I will find Mr. Neff in direct contempt for speaking out about pre-trial issues that he should not have spoken of and was warned not to speak of them and, in fact, did not properly state even what settlement offer was made. That was inaccurate as well."

{¶ 6} Sentencing for the contempt offense occurred the next day. In its October 31, 2019 judgment entry, the trial court reviewed the misconduct by appellant from the second mistrial and stated, "The Court finds beyond a reasonable doubt that this Judge personally observed the actions constituting Defendants contempt and that summary action is necessary as Defendant's actions pose an imminent threat to the administration of justice." At the contempt sentencing hearing, appellant stated on his own behalf, "I didn't say that in intention to put anything in the jury's head. My point was to flat get out that I don't care what any kind of plea bargain they were trying to give or anything. That was my point. I felt my innocence was proven, period." The trial court responded that

4.

what appellant "said about a plea deal was a flat-out fabrication. That is perjury. I take a very dim view of that." The trial court explained:

> Well, my perspective of it was that you were seeing a trial go very bad, you were seeing that witnesses were testifying about you in a very damaging way. I suspect that you saw that you didn't have much hope. Your counsel has said that he warned you not to say what you said. You did it in order to get a mistrial. That is my impression. * * * You have seen, I think, by the course of that trial the last two, three days that it is highly likely you are going to be convicted. It is highly likely you are going to spend a lot of time in prison.

### C. Third Jury Trial

**{¶ 7}** The third jury trial commenced on December 17, 2019, and continued for three days. Appellee presented to the jury 14 witnesses: four victim witnesses, five witnesses from law enforcement who investigated the offenses, four witnesses who were codefendant informants, and one additional informant who was not a codefendant. The trial court admitted into evidence 18 state exhibits and the stipulations of facts for 38 offenses. After appellee rested its case, appellant moved for acquittal pursuant to Crim.R. 29(A), which the trial court denied. Appellant testified for his defense, in addition to a codefendant's spouse. After jury deliberations, the jury convicted appellant of the following 27 offenses:

5.

{¶ 8} Count 1, engaging in a pattern of corrupt activity, a violation of R.C. 2923.32(A)(1) and a first-degree felony, R.C. 2923.32(B)(1). There were no stipulations for Count 1. According to the record, between January 9 and September 15, 2018, appellant was employed by or associated with an enterprise through a pattern of corrupt activity. During that period about 20 break-ins and thefts from hunting cabins, boats, barns and commercial properties occurred in Ottawa, Erie and Sandusky counties. Appellant, as the leader of the theft ring, coordinated others to engage in the criminal enterprise, which involved the planning of the break-ins and thefts, the actual break-ins and thefts, the acquisition of stolen property, the distribution of the stolen items among the theft ring, and the sale of the stolen items through private sales and flea markets.

{¶ 9} Different combinations of codefendants formed for each theft, and not all codefendants involved in the theft ring testified at appellant's trial. In addition, not all codefendants that testified at appellant's trial had plea deals.

{¶ 10} Cody Brentgartner testified at trial he was a codefendant with a plea deal. Mr. Brentgartner conducted all of the break-ins and thefts with different combinations of codefendants and, on one occasion, with appellant. Mr. Brentgartner also planned the incidents with appellant's guidance, such as identifying the victims to target, explaining methods to evade security measures, or commissioning the type of stolen property to acquire. Two victims of the theft ring testified at trial. Mr. Brentgartner also disposed of the stolen items by primarily selling them to appellant who resold them at a substantial markup. In some instances, Mr. Brentgartner sold stolen items to Ron Royster, who then

6.

resold them at flea markets knowing the items were stolen. Mr. Royster, a co-defendant, did not testify at appellant's trial.

{¶ 11} Dakota Siefke and Jonathan Torres were two codefendants with plea deals and testified at trial. Each participated in some of the break-ins and thefts, and identified the property stolen and the people, including appellant, involved with those theft ring incidents. Taylor Gobmeier was a codefendant without a plea deal who participated in some of the break-ins and thefts as a drop off and getaway driver. Ms. Gobmeier testified at trial and identified the property stolen and the people, including appellant, involved with those theft ring incidents. Dava Neff is appellant's sister-in-law and the mother of another codefendant, Zachary Neff, who was convicted for his involvement in the theft ring, but who did not testify at trial. Mrs. Neff testified at appellant's trial as to what she heard and saw of appellant's participation in the theft ring and influence over her son.

{¶ 12} Joseph Leroux, a detective from the Ottawa County Sheriff's Office, testified at trial about his investigation of the theft ring. Mr. Brentgartner provided the initial information about appellant's involvement as "the leader of the crew * * * [who would] tell them what to target and where to target." In the course of Detective Leroux's investigation, he uncovered the scope of the theft ring and corroborated Mr. Brentgartner's information with witnesses who testified at trial and with witnesses who did not. Tiffany Soboslay from the Lorain police department, Matt Scheerer from the Erie County sheriff's office, John Gangway from the Catawba Island Township police department, and Joel Scherer from the Ottawa County prosecutor's office each testified at

7.

trial about their separate investigations of the break-ins and thefts that led to corroborating evidence of appellant's theft ring activities.

{¶ 13} Count 2, complicity to breaking and entering, a violation of R.C. 2923.03(A)(1) of the principle offense of R.C. 2911.13(A) and a fifth-degree felony, R.C. 2923.03(F), and Count 3, complicity to theft from person in a protected class, a violation of R.C. 2923.03(A)(1) of the principle offense of R.C. 2913.02(A)(1) and a fourth-degree felony, R.C. 2923.03(F), concern the same victim. The parties stipulated that on or about August 24, 2018, a trespass by force, stealth or deception occurred at night an unoccupied structure, a boat located at Dock F-14 at Shrock's Marina in Ottawa County, with the purpose to commit theft of fishing equipment valued between $1,000 and $7,500 and without the consent of the owner, Larry Loeckel, who is over 65 years old. The evidence at trial established that appellant solicited or procured three codefendants to commit the trespass and theft.

{¶ 14} Count 4 is for complicity to breaking and entering, a violation of R.C. 2923.03(A)(1) of the principle offense of R.C. 2911.13(A) and a fifth-degree felony, R.C. 2923.03(F). The parties stipulated that on or about August 24, 2018, a trespass by force, stealth or deception occurred at night of an unoccupied structure, a boat owned by Dennis Bednarski, located at Dock F-11 at Shrock's Marina in Ottawa County to commit a theft. The evidence at trial established that appellant solicited or procured the same three codefendants to commit the trespass.

8.

{¶ 15} Count 5, complicity to breaking and entering, a violation of R.C. 2923.03(A)(1) of the principle offense of R.C. 2911.13(A) and a fifth-degree felony, R.C. 2923.03(F), and Count 6, complicity to theft, a violation of R.C. 2923.03(A)(1) of the principle offense of R.C. 2913.02(A)(1) and a fifth-degree felony, R.C. 2923.03(F), concern the same victim. The parties stipulated that on or about August 23, 2018, a trespass by force, stealth or deception occurred at night of an unoccupied structure, a boat located at Dock F-12 at Shrock's Marina in Ottawa County, with the purpose to commit theft of fishing equipment valued between $1,000 and $7,500 and without the consent of the owner, Greg Ammons. The evidence at trial established that appellant solicited or procured the same three codefendants to commit the trespass and theft.

{¶ 16} Count 7, complicity to breaking and entering, a violation of R.C. 2923.03(A)(1) of the principle offense of R.C. 2911.13(A) and a fifth-degree felony, R.C. 2923.03(F), and Count 8, complicity to theft from person in a protected class, a violation of R.C. 2923.03(A)(1) of the principle offense of R.C. 2913.02(A)(1) and a fourth-degree felony, R.C. 2923.03(F), concern the same victim. The parties stipulated that on or about August 24, 2018, a trespass by force, stealth or deception occurred at night of an unoccupied structure, a boat located at Dock F-10 at Shrock's Marina in Ottawa County, with the purpose to commit theft of fishing equipment valued between $1,000 and $7,500 and without the consent of the owner Kevin McCray, who is over 65 years old. The evidence at trial established that appellant solicited or procured the same three codefendants to commit the trespass and theft.

9.

{¶ 17} Count 9, complicity to breaking and entering, a violation of R.C. 2923.03(A)(1) of the principle offense of R.C. 2911.13(A) and a fifth-degree felony, R.C. 2923.03(F), and Count 10, complicity to theft from person in a protected class, a violation of R.C. 2923.03(A)(1) of the principle offense of R.C. 2913.02(A)(1) and a fourth-degree felony, R.C. 2923.03(F), concern the same victim. The parties stipulated that on or about August 22 through 27, 2018, a trespass by force, stealth or deception occurred at night of an unoccupied structure, a boat docked at Shrock's Marina in Ottawa County, with the purpose to commit theft of fishing equipment valued between $1,000 and $7,500, and without the consent of the owner, Robert Tackett, who is over 65 years old. The evidence at trial established that appellant solicited or procured the same three codefendants to commit the trespass and theft.

{¶ 18} Count 11, complicity to breaking and entering, a violation of R.C. 2923.03(A)(2) of the principle offense of R.C. 2911.13(A) and a fifth-degree felony, R.C. 2923.03(F), and Count 12, complicity to theft, a violation of R.C. 2923.03(A)(2) of the principle offense of R.C. 2913.02(A)(1) and a first-degree misdemeanor, R.C. 2923.03(F) concern the same victim. The parties stipulated that on or about August 19 through 24, 2018, a trespass by force, stealth or deception occurred at night of an unoccupied structure, a boat located at Dock G-6 at Foxhaven Marina in Ottawa County, with the purpose to commit a theft of fishing equipment valued under $1,000 and without the consent of the owner David Vargo. The evidence at trial established that appellant

10.

solicited or procured a different combination of three codefendants to commit the trespass and theft.

{¶ 19} Count 13, complicity to breaking and entering, a violation of R.C. 2923.03(A)(2) of the principle offense of R.C. 2911.13(A) and a fifth-degree felony, R.C. 2923.03(F) and Count 14, complicity to theft from person in a protected class, a violation of R.C. 2923.03(A)(2) of the principle offense of R.C. 2913.02(A)(1) and a fourth-degree felony, R.C. 2923.03(F), concern the same victims. The parties did not stipulate to these counts. The evidence at trial established that on or about August 20 to 21, 2018, appellant aided or abetted three codefendants, each with a plea deal, to commit the offense of breaking and entering at night of an unoccupied structure, a boat owned by Donald Ralph, who is over 65 years old, at Foxhaven Marina in Ottawa County, and to commit a theft of eight fishing poles valued between $1,000 and $7,500. Jacob Geiss testified at trial that he innocently purchased from appellant some of the stolen fishing poles, and through law enforcement investigations, the identifiable stolen property was seized and returned to the owner.

{¶ 20} Count 17, complicity to breaking and entering, a violation of R.C. 2923.03(A)(2) of the principle offense of R.C. 2911.13(A) and a fifth-degree felony, R.C. 2923.03(F), and Count 18, complicity to theft, a violation of R.C. 2923.03(A)(2) of the principle offense of R.C. 2913.02(A)(1) and a fifth-degree felony, R.C. 2923.03(F), concern the same victim. The parties stipulated that on or about August 18 through September 15, 2018, a trespass by force, stealth or deception occurred at night of an

11.

unoccupied structure, a boat located at Dock A-12 at Foxhaven Marina in Ottawa County, with the purpose to commit a theft of fishing equipment valued between $1,000 and $7,500 and without the consent of the owner Jeffrey Martin. The evidence at trial established that appellant solicited or procured three codefendants to commit the trespass and theft.

{¶ 21} Count 34, possession of weapons under disability, a violation of R.C. 2923.13(A)(3) and a third-degree felony, R.C. 2923.13(B). The parties stipulated that on or about June 19, 2018, a 12-guage Beretta shotgun, a 20-gauge Beretta shotgun, and a 9-milimeter Glock handgun, each in operable condition, were taken from 3500 West Willow Beach Road, Lot 4, in Ottawa County. The parties further stipulated that appellant was convicted of a felony-level possession of drugs on March 12, 2004, and has not been relieved of that R.C. 2923.14 disability. The evidence at trial established that two codefendants stole the foregoing and delivered the shotguns to appellant, who received them while under the weapons disability.

{¶ 22} Count 35, complicity to burglary, a violation of R.C. 2923.03(A)(2) of the principle offense of R.C. 2911.12(A)(3) and a third-degree felony, R.C. 2923.03(F), and Count 36, complicity to theft, a violation of R.C. 2923.03(A)(2) of the principle offense of R.C. 2913.02(A)(1) and a fifth-degree felony, R.C. 2923.03(F), concern the same victim. The parties stipulated that on or about August 14 to 15, 2018, a trespass by force, stealth or deception occurred at night of an occupied structure, a hunting lodge located at 6529 West Lakeshore Drive, Ottawa County, with the purpose to commit a theft of a

12.

chainsaw, hunting equipment, an electric golf cart and a television valued between $1,000 and $7,500 and without the consent of the owner, Jim Cornell. The evidence at trial established that appellant aided or abetted three codefendants to commit the trespass and theft.

{¶ 23} Count 39, complicity to breaking and entering, a violation of R.C. 2923.03(A)(1) of the principle offense of R.C. 2911.13(A) and a fifth-degree felony, R.C. 2923.03(F), and Count 40, complicity to theft, a violation of R.C. 2923.03(A)(1) of the principle offense of R.C. 2913.02(A)(1) and a fourth-degree felony, R.C. 2923.03(F), concern the same victim. The parties stipulated that on or about June 25 to 26, 2018, a trespass by force, stealth or deception occurred at night of an unoccupied structure, a storage container located at 801 State Route 269, Martins Point Road, Erie County, with the purpose to commit a theft of a side-by-side ATV, tools and hunting equipment valued between $7,500 and $150,000 and without the consent of the owner, Standing Rush, LLC. The evidence at trial established that appellant solicited or procured two codefendants to commit the trespass and theft.

{¶ 24} Counts 41 to 43 concern the same victim: complicity to breaking and entering, a violation of R.C. 2923.03(A)(1) of the principle offense of R.C. 2911.13(A) and a fifth-degree felony, R.C. 2923.03(F); complicity to theft, a violation of R.C. 2923.03(A)(1) of the principle offense of R.C. 2913.02(A)(1) and a first-degree misdemeanor, R.C. 2923.03(F); and receiving stolen property, a violation of R.C. 2913.51(A) and a first-degree misdemeanor, R.C. 2913.51(C). The parties did not

13.

stipulate to these counts. The evidence at trial established that on or about July 14 through 16, 2018, appellant solicited or procured four codefendants to commit the offense of breaking and entering at night of an unoccupied structure, storage containers, owned by Joseph Brunkhorst located at 7000 Barrett Road, Erie County, to commit a theft of duck decoys valued under $1,000. In addition, appellant received, retained or disposed of the duck decoys obtained through theft as part of a continuing course of criminal conduct pursuant to R.C. 2901.12(H). Appellant paid two codefendants for their "cut" of the stolen duck decoys, picked up the stolen duck decoys from the codefendant temporarily storing them, and then proceeded to sell some of them to Rod Wozniak, a buyer victim, who testified at trial. Through law enforcement investigations, Mr. Wozniak identified the stolen property.

{¶ 25} Count 47 is for complicity to theft, a violation of R.C. 2923.03(A)(2) of the principle offense of R.C. 2913.02(A)(1) and a fourth-degree felony, R.C. 2923.03(F). The parties stipulated that on or about July 27, 2018, a theft occurred from a construction site near the intersection of State Route 523 and County Road 184 of an industrial-sized water pump on a trailer valued between $7,500 and $150,000 without the consent of the owner, Ohio CAT. The evidence at trial established that appellant aided or abetted three codefendants to commit the theft and that appellant sought to sell the pump to a co-defendant who owned a construction business that dredges wetlands.

{¶ 26} Count 48, complicity to breaking and entering, a violation of R.C. 2923.03(A)(2) of the principle offense of R.C. 2911.13(A) and a fifth-degree felony, R.C.

14.

2923.03(F), and Count 49, complicity to theft, a violation of R.C. 2923.03(A)(2) of the principle offense of R.C. 2913.02(A)(1) and a fifth-degree felony, R.C. 2923.03(F), concern the same victim. The parties stipulated that on or about July 12 through 16, 2018, a trespass by force, stealth or deception occurred at night of an unoccupied structure, a barn located at 6105 O'Neal Road, Ottawa County, with the purpose to commit a theft of large water pumps, weed whackers, and a metal cart valued between $1,000 and $7,500 and without the consent of the owner, Westlake Sportsman Association. The evidence at trial established that appellant aided or abetted two codefendants to commit the trespass and theft.

### D. Sentencing

{¶ 27} Sentencing occurred on January 10, 2020, and for sentencing purposes pursuant to RC. 2941.25 the trial court merged Counts 2 and 3, Counts 5 and 6, Counts 7 and 8, Counts 9 and 10, Counts 11 and 12, Counts 13 and 14, Counts 17 and 18, Counts 35 and 36, Counts 39 and 40, Counts 41, 42 and 43, and Counts 48 and 49. The unmerged counts remained Counts 1, 4, 34, and 47. Appellee elected the following merged counts for sentencing: Counts 3, 6, 8, 10, 11, 14, 18, 35, 40, 41 and 49. The trial court then sentenced appellant to consecutive prison terms totaling 25 years as follows: ten years for Count 1; 30 months each for Counts 34 and 35; 14 months each for Counts 3, 8, 10, 14, 40 and 47; and six months each for Counts 4, 6, 11, 18, 41 and 49.

{¶ 28} Appellant stated at sentencing, "I am innocent. That is all I got (sic.) to say. I have had enough of this crap."

15.

{¶ 29} Appellant's trial counsel presented mitigating evidence at sentencing, including appellant's honesty about his prior criminal record with guilty pleas, the glaring lack of physical evidence linking appellant to the crimes, and questioning the motives of adverse witnesses who received plea deals. In frustration, appellant's trial counsel pointed out, "We know the Court is going to issue a lengthy sentence. His record speaks for itself." Appellant's trial counsel also pointed out that appellant's mother, wife and others said that, "Rosco from the past is not who he is now." To emphasize how appellant has changed from the past, appellant's trial counsel explained appellant's unwavering claim of his innocence, "Even today, he could mitigate his sentence by apologizing, saying he did something he didn't do, to that extent because that is one of the factors this Honorable Court has to consider. He maintains his innocence, Judge."

{¶ 30} Prior to announcing the sentence, the trial court stated, "I have considered your statements here today. I have considered those facts and circumstances learned throughout the course of the trial or trials. I have certainly considered the decision of the jury in their finding of guilt in this matter." As further mitigation, appellant's trial counsel asked the trial court to reconsider imposing consecutive sentences after the trial court determined that consecutive sentences were "necessary to protect the public from future crime or punish the offender, and * * * consecutive sentences are not disproportionate to the seriousness of the offender's conduct and the danger he poses to the public."

{¶ 31} Appellant sets forth six assignments of error in this appeal:

I. Whether defendant-appellant's double jeopardy protections were violated when it proceeded to a subsequent trial after a mistrial.

II. Defendant-appellant's Fifth, Sixth, and Fourteenth Amendment rights were violated when trial counsel's performance was so deficient as to deny defendant-appellant of his Constitutional rights under the federal and Ohio state constitutions.

III. The trial court erred in sentencing defendant-appellant to a twenty-five year term of incarceration.

IV. The trial court erred when it sentenced defendant-appellant to a term of incarceration grossly disproportionate to the conduct.

V. Defendant-appellant's conviction was against the manifest weight of the evidence.

VI. The state failed to present sufficient evidence to sustain a conviction against defendant-appellant.

## II. Double Jeopardy

{¶ 32} In support of his first assignment of error, appellant argues his 27 convictions must be reversed because his federal double jeopardy protections were violated by a third jury trial where appellee failed to show manifest necessity for a mistrial, as required by *State v. Gunnell*, 132 Ohio St.3d 442, 2012-Ohio-3236, 973 N.E.2d 243, ¶ 25. Appellant argues the trial court failed to adequately reflect on and

17.

inquire about the existence of juror bias prior to declaring the second mistrial. In response, appellee argues appellant waived his defense of double jeopardy when he failed to raise it prior to the third trial.

{¶ 33} "The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution ensures that a state may not put a defendant in jeopardy twice for the same offense." *Id.* The Double Jeopardy Clause "protect[s] against three abuses: (1) 'a second prosecution for the same offense after acquittal,' (2) 'a second prosecution for the same offense after conviction,' and (3) 'multiple punishments for the same offense.'" *State v. Mutter*, 150 Ohio St.3d 429, 2017-Ohio-2928, 82 N.E.3d 1141, ¶ 15, quoting *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), *overruled on other grounds.* It is undisputed in the record that prior to the commencement of the third trial, appellant had not been acquitted, convicted, or punished on the merits for the same 27 offenses.

## A.  Waiver

{¶ 34} We will first address whether appellant waived his double jeopardy defense. The Ohio Supreme Court "has held many times that the plea of double jeopardy is [a] matter of defense which must be raised in the trial court or it is waived." *Neal v. Maxwell*, 175 Ohio St. 201, 202, 192 N.E.2d 782 (1963). Appellant's failure to raise before the trial court his double jeopardy defense is subject to plain error review. *State v. Body*, 8th Dist. Cuyahoga No. 109388, 2021-Ohio-703, ¶ 23; *see State v. Foust*, 105 Ohio St.3d 137, 2004-Ohio-7006, 823 N.E.2d 836, ¶ 139.

18.

{¶ 35} "An appellate court need not consider an error that was not called to the attention of the trial court at a time when such error could have been avoided or corrected by the trial court." *State v. Tuggle*, 6th Dist. Lucas No. L-07-1284, 2008-Ohio-5020, ¶ 75, citing *State v. Williams*, 51 Ohio St.2d 112, 364 N.E.2d 1364 (1977), paragraph one of the syllabus, *overruled on other grounds*. "As a result, such error is waived absent plain error." *Id.*, citing *State v. Moreland*, 50 Ohio St.3d 58, 62, 552 N.E.2d 894 (1990). "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Crim.R. 52(B). We take notice of the Crim.R. 52(B) plain error doctrine "with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus.

{¶ 36} The party asserting plain error has the burden to provide evidence supporting three determinations: (1) an actual error, i.e., a deviation from the legal rule, (2) the error was plain within the meaning of Crim.R. 52(B), i.e., an obvious defect in the trial proceedings, and (3) the error must have affected substantial rights, i.e., affected the outcome of the trial. *State v. Payne*, 114 Ohio St.3d 502, 2007-Ohio-4642, 873 N.E.2d 306, ¶ 16-17. Our plain error analysis of Crim.R. 52(B) will not warrant a reversal of appellant's convictions unless appellant establishes "that the outcome of the trial would clearly have been different but for the trial court's plain error." *State v. Waddell*, 75 Ohio St.3d 163, 166, 661 N.E.2d 1043 (1996), citing *Moreland* at 63.

19.

{¶ 37} We reviewed the record and do not find appellant points to evidence supporting the first and second elements for a claim of plain error. Even if appellant had met his burden for the first two elements, we will next review why appellant also fails on the third element: whether appellant's substantial rights were violated if there was no "manifest necessity" for the second mistrial.

**B. Manifest Necessity or High Degree of Necessity**

{¶ 38} "The Double Jeopardy Clause deals specifically with the issue whether a defendant may be retried after a trial court has declared a mistrial." *State v. Anderson*, 148 Ohio St.3d 74, 2016-Ohio-5791, 68 N.E.3d 790, ¶ 29. The Ohio Supreme Court has found, "the Double Jeopardy Clause is not offended when the state seeks to retry a defendant after a series of properly declared mistrials." *Id.* at ¶ 46. Double jeopardy will not bar a retrial over a defendant's objection to a mistrial if: (1) there was a "manifest necessity" or "high degree" of necessity for ordering a mistrial, or (2) "the ends of public justice would otherwise be defeated." (Citations omitted.) *State v. Widner*, 68 Ohio St.2d 188, 189-90, 429 N.E.2d 1065 (1981). Appellant does not contest the second prong.

{¶ 39} We review a trial court's determination of "manifest necessity" to declare a mistrial for "sound discretion." *Gunnell*, 132 Ohio St.3d 442, 2012-Ohio-3236, 973 N.E.2d 243, at ¶ 26 and 28; *State v. Gonzalez*, 6th Dist. Huron No. H-99-002, 1999 WL 1101976, *5 (Dec. 3, 1999); *State v. Schmidt*, 65 Ohio App.2d 239, 244-45, 417 N.E.2d 1264 (6th Dist.1979). The Ohio Supreme Court has determined that a trial court

20.

exercises "sound discretion" if the record demonstrates that "the trial court acted with deliberateness" when reaching its decision to declare a mistrial. *Gunnell* at ¶ 33. However, "a trial judge declaring a mistrial is not required to make explicit findings of "'manifest necessity'" nor to 'articulate on the record all the factors which informed the deliberate exercise of his discretion.'" *Renico v. Lett*, 559 U.S. 766, 775, 130 S.Ct. 1855, 176 L.Ed.2d 678 (2010), quoting *Arizona* at 517.

{¶ 40} "Manifest necessity" balances a defendant's right to have the trial concluded by a particular tribunal with the public interest in affording the prosecutor one full and fair opportunity to present the evidence to an impartial jury. *Arizona v. Washington*, 434 U.S. 497, 505, 98 S.Ct. 824, 54 L.Ed.2d 717 (1978). Appellee's burden to show "manifest necessity" for a mistrial remains even where the problem of possible juror bias was created by the defendant's own misconduct. *Id.* at 510-511; *State v. Malloy*, 2d Dist. Clark No. 09CA0092, 2011-Ohio-30, ¶ 25; *State v. Swanson*, 10th Dist. Franklin No. 89AP-199, 1989 WL 99410, *1-3 (Aug. 29, 1989).

{¶ 41} We extend great deference to the trial court's evaluation of the likelihood that the impartiality of one or more jurors may have been affected by appellant's improper testimony because the extent of the possible jury bias cannot be measured. *Arizona* at 511. However, we recognize that such deference does not end our inquiry under our obligation to determine the trial court exercised "sound discretion" and not acted "irrationally or irresponsibly" when it declared the second mistrial. *Id.* at 514. A trial court does not act "precipitately in response to the prosecutor's request for a

21.

mistrial" where there is evidence in the record the trial court gave full opportunity to the parties to explain their positions on the propriety of the second mistrial. *Id.* at 515-16.

{¶ 42} There is nothing in *Gunnell* to suggest that an inquiry of jury members was required where, as here, improper evidence or argument was interjected into the trial itself. In those situations, a trial court relies upon its own personal observations of the entire proceeding – including, but not limited to, its personal assessment of the prejudicial impact of the improper evidence or argument -- to determine whether a fair trial is still possible. Although a trial court *may* conduct an additional inquiry of jury members in those situations, the failure to conduct such an inquiry does not, in and of itself, demonstrate the lack of sound discretion.

{¶ 43} We find the trial court did not act irrationally or irresponsibly just because it failed to conduct an individual inquiry with jury members regarding the prejudicial impact of appellant's improper testimony. To the contrary, the record demonstrates that the trial court acted rationally, responsibly, and deliberately when it considered appellee's motion for mistrial. The trial court listened to the arguments of both sides and considered other plausible alternatives, including the possibility of a curative instruction. The court took a recess and came back on the record. The trial court then allowed the defense counsel and the prosecutor another opportunity to argue their respective positions before making its ruling. We further find the trial court did not abuse its discretion in finding a "manifest necessity" or "high degree" of necessity for the second mistrial.

{¶ 44} Appellant's first assignment of error is not well-taken.

22.

### III. Ineffective Assistance of Counsel

{¶ 45} In support of his second assignment of error, appellant argues that his trial counsel was ineffective for three reasons: (1) failing to object to the inclusion of a complicity jury instruction, (2) failing to file a motion to dismiss on double jeopardy grounds prior to the third jury trial, and (3) failing to present mitigating circumstances at his sentencing and conceding aggravating factors.

{¶ 46} An ineffective assistance of counsel claim must overcome the strong presumption that a properly licensed Ohio lawyer is competent. *State v. Hamblin*, 37 Ohio St.3d 153, 155-56, 524 N.E.2d 476 (1988). The record does not show appellant questioned the licensure of his trial counsel, so his competence is presumed.

{¶ 47} To overcome this presumption of competence, appellant has the burden to show both: (1) deficient performance by his trial counsel below an objective standard of reasonable representation, and (2) a reasonable probability of prejudice that but for his trial counsel's errors, he would not have been convicted of 27 offenses. *State v. Bradley*, 42 Ohio St.3d 136, 137, 538 N.E.2d 373 (1989), paragraphs two and three of the syllabus. Appellate scrutiny of trial counsel's performance is highly deferential. *Id.* at 142. "Debatable trial tactics generally do not constitute a deprivation of effective counsel." *State v. Phillips*, 74 Ohio St.3d 72, 85, 656 N.E.2d 643 (1995).

### A. Complicity Jury Instruction

{¶ 48} Appellant declares, "In this case, trial counsel's failure to object to the inclusion of a complicity jury instruction was ineffective," but provides no specific

evidence of an error for our consideration. App.R. 12(A)(2). Nevertheless, we construe appellant's argument relates to R.C. 2923.03(D), which requires the trial court to substantially give the following instruction where an alleged accomplice of the defendant testifies in a case in which the defendant is charged with complicity in the commission of or an attempt to commit an offense:

"The testimony of an accomplice does not become inadmissible because of his complicity, moral turpitude, or self-interest, but the admitted or claimed complicity of a witness may affect his credibility and make his testimony subject to grave suspicion, and require that it be weighed with great caution. It is for you, as jurors, in the light of all the facts presented to you from the witness stand, to evaluate such testimony and to determine its quality and worth or its lack of quality and worth."

{¶ 49} "After arguments are completed, a trial court must fully and completely give the jury all instructions which are relevant and necessary for the jury to weigh the evidence and discharge its duty as the fact finder. (Crim.R. 30 [A], construed.)" *State v. Comen*, 50 Ohio St.3d 206, 553 N.E.2d 640 (1990), paragraph two of the syllabus. After both sides rested and gave closing arguments, the trial court read to the jury 187-pages of instructions for its deliberations. We find the instructions were full and complete, including the verbatim instructions mandated by R.C. 2923.03(D). *State v. Newman*, 6th Dist. Erie No. E-11-065, 2013-Ohio-414, ¶ 78.

24.

{¶ 50} We do not find appellant's trial counsel's failure to object to the inclusion of the R.C. 2923.03(D) jury instruction resulted in any reversible error. *State v. Williams*, 6th Dist. Lucas No. L-17-1186, 2019-Ohio-2657, ¶ 50. "The effect of [R.C. 2923.03(D] is to leave the assessment of an accomplice's credibility to a jury after it has been properly instructed concerning the treatment of that testimony." *State v. O'Dell*, 45 Ohio St.3d 140, 145, 543 N.E.2d 1220 (1989). The record shows the jury performed its duty after receiving the required instructions, and we do not find appellant showed his trial counsel's assistance was ineffective.

### B. Motion to Dismiss on Double Jeopardy Grounds

{¶ 51} Appellant argues, "The failure to object to the retrial of defendant after the empaneling of a jury, the complete presentation of the state's case, and the granting of a mistrial over state's objection is, per se, deficient." Appellant further argues, "Had counsel's performance not been so deficient as to deny Appellant of his constitutional rights, the outcome of the case would have necessarily been different."

{¶ 52} Appellant's trial counsel is not required to perform futile acts. *Foust*, 105 Ohio St.3d 137, 2004-Ohio-7006, 823 N.E.2d 836, at ¶ 125. In light of our decision on appellant's first assignment of error, we do not find that appellant's trial counsel's failure to file a motion to dismiss on double jeopardy grounds was ineffective.

### C. Sentencing Mitigation

{¶ 53} Appellant argues his trial counsel was ineffective because at sentencing his trial counsel merely acknowledged appellant "could have apologized but did not" and

25.

acquiesced that "we know that the court is going to issue a lengthy sentence, his record speaks for itself." Appellant argues his age at forty-one years and his four prior convictions -- "of which he took responsibility for by means of a plea" -- were mitigation factors his trial counsel should have raised.

{¶ 54} The presentation of mitigating evidence at sentencing is a matter of trial strategy based on the totality of the circumstances. *State v. Taft*, 6th Dist. Huron No. H-18-003, 2019-Ohio-1565, ¶ 50. The failure to present mitigating evidence at the penalty stage does not in itself constitute proof of ineffective assistance of counsel or deprive the defendant of a fair trial. *Hamblin*, 37 Ohio St.3d at 157, 524 N.E.2d 476.

{¶ 55} The record contains substantial mitigation evidence presented by appellant's trial counsel for the trial court's consideration for mercy and leniency. We find the record shows the trial court was aware of both appellant's age and his prior guilty pleas at the time of sentencing. Even if the trial court was not aware of those factors, "there is no prejudice when the new mitigating evidence 'would barely have altered the sentencing profile presented' to the decisionmaker." *Sears v. Upton*, 561 U.S. 945, 954, 130 S.Ct. 3259, 177 L.Ed.2d 1025 (2010), quoting *Strickland v. Washington*, 466 U.S. 668, 700, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Appellant's speculations do not support a finding of ineffective assistance of counsel. *Taft* at ¶ 51.

{¶ 56} We reviewed the entire record and do not find that appellant's trial counsel's performance was ineffective. We do not find both deficient performance by his trial counsel below an objective standard of reasonable representation and a reasonable

26.

probability of prejudice that but for his trial counsel's alleged errors, appellant would not have been sentenced to 25 years in prison for his 27 convictions.

{¶ 57} Appellant's second assignment of error is not well-taken.

## IV. Felony Sentencing

{¶ 58} In support of his third and fourth assignments of error, appellant argues the trial court erred in sentencing him to 25 years in prison for three reasons: (1) the trial court impermissibly relied on appellant's testimony from the prior mistrial; (2) consecutive sentences were unwarranted by, and inconsistent with, the facts in the record; and (3) the total sentence was "grossly disproportionate" to his conduct.

{¶ 59} We review a challenge to felony sentencing pursuant to R.C. 2953.08(G)(2), which states, in part:

> The appellate court's standard for review is not whether the sentencing court abused its discretion. The appellate court may take any action authorized by this division if it clearly and convincingly finds either of the following:
>
> (a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant;
>
> (b) That the sentence is otherwise contrary to law.

**{¶ 60}** Although "contrary to law" is an undefined term, the Ohio Supreme Court guides us that, "R.C. 2953.08(G)(2)(b) * * * does not provide a basis for an appellate court to modify or vacate a sentence based on its view that the sentence is not supported by the record under R.C. 2929.11 and 2929.12." *State v. Jones*, 163 Ohio St.3d 242, 2020-Ohio-6729, 169 N.E.3d 649, ¶ 39.

### A. Prior Mistrial Testimony

**{¶ 61}** Appellant argues the trial court erred by relying on testimony from the second mistrial: "In its analysis of R.C. 2929.12, the trial court stated, 'I have considered your statements here today. I have considered those facts and circumstances learned throughout the course of *the trial or trials*.' Sentencing T. 10 (emphasis added.)." We lack the authority to grant the relief appellant seeks by reviewing if the record supports the sentence under R.C. 2929.12. *Id.*; *State v. Orzechowski*, 6th Dist. Wood No. WD-20-029, 2021-Ohio-985, ¶ 13.

### B. Consecutive Sentences

**{¶ 62}** Appellant argues consecutive sentences were unwarranted by, and inconsistent with, the facts in the record. The jury convicted appellant for one first-degree felony offense, two third-degree felony offenses, six fourth-degree felony offenses, 15 fifth-degree felony offenses, and three first-degree misdemeanor offenses. The trial court merged 23 offenses down to 11 felony offenses for sentencing purposes and ordered each individual prison term to be served consecutively for a total of 25 years. Appellant does not dispute the merger of offenses at sentencing.

28.

{¶ 63} When sentencing prison terms, the trial court is required "to adhere to R.C. 2929.14(C)(4) and 2929.41(A) in imposing consecutive sentences and to make the required findings." *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, ¶ 35. R.C. 2929.41(A) states a presumption for concurrent sentencing, except as provided for in R.C. 2929.14(C). The trial court is required to make the findings mandated by R.C. 2929.14(C)(4) both at the sentencing hearing and incorporate them into its sentencing entry, "but it has no obligation to state reasons to support its findings. Nor is it required to give a talismanic incantation of the words of the statute, provided that the necessary findings can be found in the record and are incorporated into the sentencing entry." *Id.* at ¶ 37.

{¶ 64} R.C. 2929.14(C)(4)(c) requires a three-step analysis by the trial court: (1) finding that the consecutive service is necessary to protect the public from future crime or to punish the offender; (2) finding that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public; and (3) finding the offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender. *State v. Banks*, 6th Dist. Lucas No. L-13-1095, 2014-Ohio-1000, ¶ 11.

{¶ 65} We reviewed the record and find clear and convincing evidence supporting the imposition of consecutive sentences pursuant to R.C. 2929.14(C)(4)(c). Both the sentencing hearing transcript and the subsequent judgment entry reflect the trial court engaged in the required analysis and explicitly made the required findings in the record.

29.

### C. "Grossly Disproportionate" Sentence

{¶ 66} Appellant next argues his 25-year incarceration "does not, in any manner, fit the crime" of non-violent theft offenses of "faux ducks, fishing poles, two sport weapons, and two handguns." Appellant argues that the "egregiousness of the length of sentence is shocking to common concepts of fundamental fairness" where 25 years is "equivalent to the statutory minimum sentence for aggravated murder with capital specifications."

{¶ 67} The trial court sentenced appellant to prison terms by following the applicable sentencing statutes for the merged offenses as follows: 10 years for Count 1, a first-degree felony, which is within the statutory range and less than the maximum period pursuant to R.C. 2929.14(A)(1)(b); 30 months each for Counts 34 and 35, third-degree felonies, which is within the statutory range and less than the maximum period pursuant to R.C. 2929.14(A)(3)(b); 14 months each for Counts 3, 8, 10, 14, 40 and 47, fourth-degree felonies, which is within the statutory range and less than the maximum period pursuant to R.C. 2929.14(A)(4); and six months each for Counts 4, 6, 11, 18, 41 and 49, fifth-degree felonies, which is the statutory minimum period pursuant to R.C. 2929.14(A)(5). Each of appellant's individual prison terms is within the statutory range authorized by the Ohio General Assembly for the particular offense. *State v. Hairston*, 118 Ohio St.3d 289, 2008-Ohio-2338, 888 N.E.2d 1073, ¶ 21.

{¶ 68} Appellant does not dispute that the sentence for any particular offense is outside of the statutory guidelines, and we do not find any trial court error in adhering to

30.

them. "Because the individual sentences imposed by the court are within the range of penalties authorized by the legislature, they are not grossly disproportionate or shocking to a reasonable person or to the community's sense of justice and do not constitute cruel and unusual punishment." *Id.* at ¶ 23. The 25-year aggregate prison term, resulting from consecutive imposition of reasonable individual sentences, is also not grossly disproportionate. *Id.*

{¶ 69} We find clear and convincing evidence in the record supporting the felony sentences imposed by the trial court. Appellant's third and fourth assignments of error are not well-taken.

## V. Manifest Weight of the Evidence

{¶ 70} In support of his fifth assignment of error, appellant argues his complicity convictions should be vacated because the "quality of evidence offered in support of the conviction in this matter is against the manifest weight of the evidence. The evidence here is not credible." Appellant argues the jury lost its way when it convicted him because the witnesses who testified against him were criminals who received "extreme leniency" in their own criminal cases for the same conduct. "Without their testimony, there is no evidence linking Neff to the property or the thefts."

{¶ 71} A challenge, based on the manifest weight of the evidence to a jury, questions its effect in inducing belief of appellant's guilt; it questions whether the jury could find the inclination of a greater amount of credible evidence was admitted at trial to sustain that decision than not. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d

31.

541 (1997). Judgments supported by some competent and credible evidence going to all the essential elements of the offense will not be against the manifest weight of the evidence. *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984).

{¶ 72} This court has repeatedly stated that in determining whether a verdict is against the manifest weight of the evidence, we review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether the trier of fact clearly lost its way to create such a manifest miscarriage of justice as to require a new trial. *State v. Reynolds*, 2017-Ohio-1478, 89 N.E.3d 235, ¶ 47 (6th Dist.). A conviction will be overturned only in exceptional cases. *Id.* The unanimous concurrence of all three judges of a court of appeals panel is required to overturn a judgment that results from a jury. *Thompkins* at 389.

{¶ 73} The crime of complicity is governed by R.C. 2923.03(A)(2), which states, "No person, acting with the kind of culpability required for the commission of an offense, shall do any of the following: * * * (2) Aid or abet another in committing the offense." The Ohio Supreme Court defines "aid or abet" as assisting or facilitating the commission of a crime or promoting its accomplishment. *State v. McFarland*, 162 Ohio St.3d 36, 2020-Ohio-3343, 164 N.E.3d 316, ¶ 27. The complicit party must also share the criminal intent of the principal, which may be inferred from the circumstances surrounding the crime, including the complicit party's presence, companionship, and conduct before and after the principal offense is committed. *Id.* at ¶ 39. "Aiding and abetting has been characterized as a substantive and independent offense so that aiders and abettors may be

32.

prosecuted and convicted as principals without the trial or conviction of the principal offender." *State v. Henderson*, 6th Dist. Lucas No. L-80-330, 1981 WL 5775, *2 (Sept. 4, 1981).

{¶ 74} The witnesses collectively testified at trial about their individual roles in the theft ring and about the role they saw, heard and knew appellant played in the theft ring. Although appellant attacks the credibility of the witnesses because of their plea deals, only 3 of the 14 witnesses who testified at trial had such plea deals, and the jury was instructed pursuant to R.C. 2923.03(D) to cautiously weigh their testimony. After receiving all of the evidence, the jury evaluated the credibility of the evidence presented during trial and found appellant not guilty of 17 of the 44 offenses.

{¶ 75} We find the record shows some competent and credible evidence going to all the essential elements of the 27 offenses of which the jury convicted appellant. Despite appellant's assertions to the contrary, we do not find the trier of fact clearly lost its way to create such a manifest miscarriage of justice as to require a new trial.

{¶ 76} Appellant's fifth assignment of error is not well-taken.

## VI. Sufficiency of the Evidence

{¶ 77} In support of his sixth assignment of error, appellant argues that when the evidence is viewed in the light most favorable to appellee, "there was insufficient evidence to prove that Defendant-Appellant Neff committed these offenses or was complicit in the thefts."

33.

**{¶ 78}** The record shows that after appellee rested its case, appellant moved for acquittal pursuant to Crim.R. 29(A). Crim.R. 29(A) states, "The court on motion of a defendant * * *, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment * * *, if the evidence is insufficient to sustain a conviction of such offense or offenses." After hearing each party's arguments, the trial court denied appellant's Crim.R. 29(A) motion.

**{¶ 79}** Appellant's Crim.R. 29(A) motion was governed by the same standard as a challenge to the sufficiency of evidence to sustain a verdict at trial. *State v. Tenace*, 109 Ohio St.3d 255, 2006-Ohio-2417, 847 N.E.2d 386, ¶ 37. We review de novo as a question of law a challenge whether the evidence is legally sufficient to sustain a verdict. *Thompkins*, 78 Ohio St.3d 380 at 386, 678 N.E.2d 541. Appellant's argument on appeal mirrors his arguments for acquittal during trial: (1) "there's absolutely no physical evidence"; (2) "there's no corroborating evidence whatsoever on any of these charges"; and (3) "It is all the testimony of co-defendants."

**{¶ 80}** Appellate courts do not evaluate the credibility of the evidence when determining its sufficiency because our role is to decide whether the evidence, if believed, can sustain the verdict as a matter of law. *State v. Myers*, 154 Ohio St.3d 405, 2018-Ohio-1903, 114 N.E.3d 1138, ¶ 132. "'The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" (Citation omitted.) *McFarland*, 162 Ohio St.3d 36, 2020-Ohio-3343, 164 N.E.3d 316, at

34.

¶ 24. All admissible evidence may be considered on a claim of insufficient evidence. *State v. Yarbrough*, 95 Ohio St.3d 227, 2002-Ohio-2126, 767 N.E.2d 216, ¶ 80.

{¶ 81} Upon review of all admissible evidence in the record we find appellant's challenges to the sufficiency of the evidence are without merit. We find, after viewing the evidence in a light most favorable to the prosecution, there was sufficient evidence in the record, if believed by any rational trier of fact, to find the essential elements of the 27 offenses were proven beyond a reasonable doubt and support the verdicts as a matter of law.

{¶ 82} Appellant's sixth assignment of error is not well-taken.

### VII.  Conclusion

{¶ 83} On consideration whereof, we find that substantial justice has been done in this matter. The judgment of the Ottawa County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.

Thomas J. Osowik, J.

Christine E. Mayle, J.
CONCUR.

_____
JUDGE

_____
JUDGE

_____
JUDGE

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions.  Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.